UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

XINPING LIANG,

Petitioner,

v.

WARDEN/FACILITY ADMIINISTRATOR, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, *et al*.

Respondents.

Case No. 1:26-cv-08832 (VC)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. Nos. 1, 2

This habeas action concerns the detention of Petitioner Xinping Liang, a noncitizen who has lived in the United States since being released on his own recognizance by immigration authorities. He contends that his continued detention under 8 U.S.C. § 1226(a) violates his procedural due process rights under the Fifth Amendment. For the reasons explained below, the petition is GRANTED, and his motion for a temporary restraining order is resolved as moot.

## I. BACKGROUND

Petitioner is a citizen of China who entered the United States after crossing the Tecate, California border in February 2024. Dkt. No. 1 at 1. Shortly after his entry, immigration authorities took Petitioner into custody, issued him a Notice to Appear placing him in removal proceedings, and released him on his own recognizance (i.e., conditional parole). *Id*. at 2, 54–57. The recognizance order listed multiple conditions, including reporting requirements and that Petitioner abide by all local, state, and federal laws. *Id*. at 57. Petitioner alleges that he complied with all the conditions of his recognizance order. *Id*. at 2

Petitioner began living with his wife and three children in California. *Id.* at 2–3. Prior to his detention, he was his family's primary source of income. *Id.* at 3. He further claims that he and his wife applied for asylum, and that the application remains pending with USCIS. *Id.* at 3, 67–84. Petitioner was authorized to work in the United States pursuant to that pending application. *Id.* at 86. His work authorization expires in 2029. *Id.* In August 2026, Petitioner was pulled over by ICE while traveling to work and has remained in custody since. *Id.* at 4.

Petitioner subsequently filed a habeas petition in the Western District of New York as he was initially detained in that district. *See Liang v. Mullin*, Case No. 1:26-cv-01818-JLS, Dkt. No. 1 ("*Liang I*"). The court's ruling consisted of a three-line order in which it explained that "Respondents concede that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) under Second Circuit caselaw[,]" and that Petitioner was entitled to a custody redetermination hearing pursuant to that statute. *Id.* The court did not address due process, or Petitioner's prior release from immigration custody, in the order.

Petitioner was provided with a bond hearing pursuant to § 1226(a) in September 2026. *See id.* at 4. The immigration judge denied release on bond, placing the burden on Petitioner to show that he was neither a flight risk nor danger to the community. Dkt. No. 7-4 at 1. In denying release, the immigration judge determined that Petitioner "is a significant flight risk, and no amount of bond will mitigate such risk[.]" Dkt. No. 1 at 32. The immigration judge did not address Petitioner's prior release on his own recognizance, or the fact that he had complied thus far with all the conditions of his release. *See* Dkt. No. 7-4 at 2–3.

## II. DISCUSSION

Petitioner argues that he is entitled to release from custody because the bond hearing he received did not involve an individualized assessment of whether he presented a flight risk *on or prior to* his re-arrest and re-detention, in violation of his procedural due process rights under the Fifth Amendment. Dkt. No. 1 at 10. Respondents oppose relief, arguing that the petition should be dismissed under the abuse of the writ doctrine, and because Petitioner has failed to exhaust his administrative remedies through an appeal of his bond denial. Dkt. No. 7 at 2–4. Neither

argument has merit, and Petitioner is entitled to relief on his due process claim.

### A. Abuse of the Writ

Respondents argue that the petition is precluded by the abuse of writ doctrine due to the Western District of New York's grant of the petition in *Liang I*. Dkt. No. 7 at 2–3. Specifically, they argue that the "circumstances surrounding Petitioner's current detention, and whether Petitioner's federal due process rights were violated, has already been litigated and resolved in his favor in his first-filed habeas action." *Id*. at 2.

"The doctrine of abuse of the writ generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011). However, the doctrine does not apply where the petitioner can show "(1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Id.* Here, Petitioner has cause for bringing a successive petition and a fundamental miscarriage of justice would result were the Court not to consider his due process claim. First, it appears that the Western District of New York court did not address due process in its ruling on *Liang I*. Refusing to consider Petitioner's due process claim here would result in a fundamental miscarriage of justice, especially given that he has been detained for nearly two months. Second, though Petitioner could have brought a due process claim challenging his re-detention in *Liang I*, this second petition brings a due process claim on slightly different facts: specifically, that the due process violation in his re-detention was not cured by the subsequent bond hearing he received. Accordingly, there is also cause for bringing this second petition.

### B. Exhaustion

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). As the Ninth Circuit has explained:

> Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). However, even if these factors weigh in favor of exhaustion, "there are a number of exceptions to the general rule[,] … such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

An exception applies to Petitioner's due process claim. "[C]ontrary to Respondents' contention that Petitioner has merely challenged the [immigration judge's] 'erroneous factual determinations and evidentiary errors,' [citation] the basis for the Petition is a claimed deprivation of constitutional due process." *Rufino Ligario Hernandez v. Mark Wayne Mullin, et al.*, No. 5:26-CV-00585-JAK-ADS, 2026 WL 846037, at * 7–8 (C.D. Cal. Mar. 24, 2026) (excusing prudential administrative exhaustion as futile). Specifically, that Petitioner was entitled to process *before* he was arrested and detained to determine whether any changed circumstances since his prior release from immigration custody necessitated his arrest. He further contends that the belated bond hearing did not cure this due process violation. "Because this claim is not within the jurisdiction of the [Board of Immigration Appeals], requiring administrative exhaustion would be futile." *Rufino Ligario Hernandez*, 2026 WL 846037, at *8; *Yero v. U.S Gen. Att'y*, No. 1:26-CV-04312-DAD-JDP, 2026 WL 1707102, at *3 (E.D. Cal. June 12, 2026) (excusing exhaustion requirement where due process claim alleged Petitioner was entitled to notice and pre-deprivation process prior to his re-arrest by ICE).

### C. Due Process

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460

(1989)).

"[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33 (N.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."). Here, the Government's election to release Petitioner on his own recognizance in 2024 "provided [him] with a liberty interest that is protected by the Due Process Clause." *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2026 WL 1162724, at *4 (N.D. Cal. Apr. 29, 2026); *see also He v. Lyons*, No. 25-CV-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond."); *Guillermo M. R. v. Kaiser*, 791 F.Supp.3d 1021, 1029 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, 2025 WL 1771438, at *3 (collecting cases finding that noncitizens who have been released have a strong liberty interest).

In determining what process is due commensurate with a noncitizens' liberty interest, many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge*. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh in Petitioner's favor. First, Petitioner has a significant private

interest in his continued release from custody. Petitioner was released by immigration authorities and living at liberty for nearly two years prior to his re-detention. During that time, Petitioner was able to live with his wife and children and support his family financially while his immigration proceedings progressed. His current detention denies him that freedom.

Second, the risk of erroneous deprivation is high when, as here, Petitioner's release was revoked without any showing of changed circumstances since the time of his 2024 release. *See Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025). The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *see also*, *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *7 (N.D. Cal. Oct. 3, 2025) ("Under federal regulation, DHS was authorized to release them under § 1226 only upon a determination that 'such release would not pose a danger to property or persons' and that they were 'likely to appear for any future proceeding.'"). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026) (internal quotation omitted).

At Petitioner's belated § 1226(a) bond hearing in September, the immigration judge did not make any finding that circumstances had changed since the Government's initial decision to release him. Indeed, nothing in the record supports the conclusion that Petitioner had become a flight risk or danger to the community since his initial release: he has no criminal history and there is no evidence that he has failed to abide any ICE directives.

"While the Ninth Circuit concluded that a post-detention bond hearing generally satisfies due process for the detention of a noncitizen pending removal proceedings … it did not foreclose 'as-applied due process challenges to § 1226(a).'" *Perez Bueno v. Janecka*, No. 5:25-cv-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022)). Here, the risk of erroneous deprivation is high where the

Government "fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing" demonstrating changed circumstances since the individual's prior detention and release. *Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (finding due process violation where Government failed to provide *pre*-deprivation process, even though Petitioner had received a belated bond hearing).

Finally, "the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Since Respondents did not engage with Petitioner's due process arguments in opposing the petition, they have not provided the Court with any information regarding the burden, if any, that additional process may place on the Government if relief is ordered. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so[,]" but it must provide Petitioner with notice of the changed circumstances and a hearing first. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

## III. CONCLUSION AND ORDER

Accordingly, the Petition is GRANTED as to Petitioner's due process claim. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner from their custody.

2. The Government shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which the Government must show by clear and convincing evidence that he is a flight risk or danger to the community.

4. This Order does not address the circumstances in which the Government may detain Petitioner in the event he becomes subject to an executable final order of removal.

The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: November 16, 2026

VINCE CHHABRIA
United States District Judge